UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-23903-CIV-GAYLES

**CYPRESS PROPERTY, LLC,**

      **Plaintiff,**

v.

**JPMORGAN CHASE BANK, N.A.,**

      **Defendant.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant JPMorgan Chase Bank, N.A.'s Renewed Motion for Final Summary Judgment on Plaintiff's Claim and Defendant's Counterclaim ("Defendant's Motion") [ECF No. 48] and Plaintiff Cypress Property, LLC's Motion for Summary Judgment on Plaintiff's Complaint and Defendant's Counterclaim ("Plaintiff's Motion") [ECF No. 50] (collectively the "Motions"). The Court has considered the Motions, the record, and argument of counsel and is otherwise fully advised. For the reasons that follow, Defendant's Motion is denied, and Plaintiff's Motion is granted.

**I.   BACKGROUND**[1]

The facts in this case are largely undisputed. The primary issue is whether the parties' agreement requires that rent be increased annually. The Court finds that it does.

---

[1] The relevant facts are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Defendant JPMorgan Chase Bank, N.A.'s Statement of Undisputed Material Facts in Support of Renewed Motion for Final Summary Judgment [ECF No. 49]; Plaintiff Cypress Property, LLC's Statement of Material Facts in Support of Its Motion for Summary Judgment [ECF No. 51]; and Plaintiff Cypress Property, LLC's Statement of Undisputed Material Facts in Opposition of Defendant JPMorgan Chase Bank, N.A.'s Renewed Motion for Final Summary Judgment [ECF No. 55].

In 2010, Plaintiff Cypress Property, LLC ("Plaintiff") and Defendant JPMorgan Chase Bank, N.A. ("Defendant") began discussing the terms of an agreement whereby Defendant would lease Plaintiff's property. On July 23, 2010, Defendant sent Plaintiff a letter of intent (the "LOI") detailing the parameters of their negotiations. [ECF No. 24-1; ECF No. 49 ¶ 1]. The LOI indicated that "base rent" would "increase every five years." [ECF No. 24-1]. The LOI also specifically provided that "it [did] not constitute a binding agreement in and of itself." *Id.*

The parties based the first draft of their agreement on Defendant's standard ground lease template. [ECF No. 51 ¶ 3]. Over the course of a year, the parties negotiated the terms of their agreement, exchanging ten different drafts. [ECF No. 49 ¶ 3]. On January 23, 2012, the parties executed the final version of the agreement (the "Lease"). [ECF No. 1-1].

It is undisputed that the Lease required Defendant to pay $285,000 in "Base Rent" for the first five years. *Id.* at § 3.2(b). However, the parties disagree on when Base Rent increases after the first five years. The Lease provides in pertinent part:

> 3.2 Base Rent. Tenant shall pay rent ("Base Rent") to Landlord in the amounts set forth below for the periods set forth below:
>
> …
>
> (c)        Commencing on the first day of the sixty-first (61st) Lease Month following the Rent Commencement Date and on the first day of every fifth (5th) calendar year thereafter ("**Effective Change Date**"), Base Rent shall be increased annually by the percentage of increase in the "CPI Index" (hereinafter defined) which has occurred between the first calendar month immediately preceding the first full calendar month of the sixty (60) Lease Month period or any subsequent five (5) calendar year period then expiring, as the case may be (the "**Base Month**"), and the calendar month immediately preceding the month of the Effective Change Date in which the Base Rent is to be increased (the "**Comparison Month**") (e.g. if the Rent Commencement Date is July, 2011, then the first Base Month is June, 2011 and the first Comparison Month will be June, 2016). Notwithstanding the percentage of increase established by the CPI Index on any Effective Change Rate, Base Rent shall increase by a minimum of eight percent (8%) and a maximum of twelve percent (12%) on each Effective Change Date. . . . During the pendency of any dispute, Tenant shall continue to pay to Landlord annual Base Rent in the amount due and payable by Tenant prior to the Effective Change Date increased by

>  8% in equal monthly installments, subject to readjustment upon a final determination hereunder.

[ECF No. 1-1].

For the first five years of the Lease, Defendant paid $285,000 per year in Base Rent as required by § 3.2(b). [ECF No. 49 ¶ 14]. In year six, in accordance with § 3.2(c), Plaintiff increased the Base Rent by 8.195 percent. *Id.* ¶ 13. Defendant paid the increased amount without dispute. *Id.* ¶ 14. On May 13, 2019, Plaintiff notified Defendant that Base Rent would again increase in year seven. [ECF No. 51 ¶ 9]. Defendant disputed that the Lease permitted Plaintiff to increase the rent annually and refused to pay the increase. *Id.* at ¶10. On July 2, 2019, Plaintiff declared Defendant in default under the Lease. *Id.* at ¶ 11.

On August 12, 2019, Plaintiff filed this action for breach of the Lease in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [ECF No. 1-1]. Defendant removed the action to this Court. On September 25, 2019, Defendant answered the Complaint and filed a counterclaim asking the Court to declare that it has not breached the Lease. [ECF No. 3]. On December 17, 2020, the parties each moved for summary judgment. Defendant argues that the unambiguous terms of the Lease only permit Plaintiff to increase Base Rent every five years.[2] Plaintiff also argues that terms of the Lease are unambiguous, but contends that after the first five years, Base Rent shall be increased annually.

## II.     LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard

---

[2] Defendant also argued, in the alternative, that if the Court found the Lease Agreement to be ambiguous, extrinsic evidence supports a finding that the parties intended for Base Rent to only be increased every five years.

provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### III.   DISCUSSION

The Lease provides that it will be interpreted and construed in accordance with Florida law. Under Florida law, "[c]ontract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties['] intent at the time of the execution of the contract." *Spungin v. GenSpring Family Offs., LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) (internal quotation marks omitted) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)). "In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Id.* (internal quotation marks omitted) (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla.

4

1st DCA 1989)). If a court determines that the terms of a contract are ambiguous, only then is "parol evidence [] admissible to explain, clarify or elucidate the ambiguous terms." *Id.* (internal quotation marks omitted) (quoting *Taylor*, 1 So. 3d at 350–51). "[T]he words should be given their natural, ordinary meaning," and "where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions or unexpressed intentions." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).

As stated above, the parties dispute whether § 3.2(c) of the Lease permits Plaintiff to increase Base Rent every year after the first five years or only once every five years. The Court begins by looking at the plain language of the provision. The Lease clearly provides that starting in year six and then every subsequent five years, "Base Rent shall be increased **annually** . . . ." [ECF No. 1-1 (emphasis added)]. "Annually" is defined as "once a year: each year." *Annually*, Dictionary by Merriam-Webster, https://www.merriam-webster.com/dictionary/annually (last visited Apr. 28, 2021). As an adverb, the word "annually" modifies the word "increased." Accordingly, the Lease allows for Base Rent to be increased once a year.

Defendant contends that the Lease's reference to the sixty-first month and every subsequent five-year period necessarily means that Base Rent can only be increased every five years. The Court disagrees. Indeed, Defendant's reading would require the Court to erase the word "annually" from the Lease—something it cannot do. *See Ceradini v. IGT Serv., Inc.*, 959 So. 2d 348, 351 (Fla. 3d DCA 2007) ("[I]t is a cardinal principal of contract construction that agreements are to be interpreted so as to give meaning to all their provisions"); *Murphy v. Young Men's Christian Assoc. of Lake Wales, Inc.*, 974 So. 2d 565, 568 (Fla. 2d DCA 2008) (internal citations omitted) ("[A]ll terms of a contract provision must be read as a whole to give every statement meaning"). The most plausible construction of the Lease is that, beginning in year six, Base Rent is increased annually, but the rate of increase is calculated every five years based on the difference

in the CPI Index.³ Therefore, the Lease requires that Base Rent be increased every year by a rate that is computed every five years. This construction gives meaning to all of the terms in the Lease.

Defendant points to extrinsic evidence, including the LOI and deposition testimony, to establish that the parties only intended to have rent increases every five years. The Court, however, cannot consider extrinsic evidence when the plain language of the contract is unambiguous. *See Scott v. Carrier Corp.*, 662 F. App'x 798, 803 (11th Cir. 2016) (internal quotations omitted) ("[I]t is well-established in Florida that if a contract provision is clear and unambiguous, a court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract."). Defendant also argues that allowing Plaintiff to increase Base Rent annually will result in exorbitant and unreasonable amounts.⁴ While Defendant might be faced with unusually large increases in Base Rent, the Court is without authority to negate the terms of an unambiguous contract where one party—with equal bargaining power—is unhappy with some of the consequences of the bargain. *See Leverso v. SouthTrust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1534 (11th Cir. 1994) ("It is well settled that a court cannot rewrite the terms of a contract in an attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain."); *Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000) ("It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. . . . A fundamental tenent of contract law is that parties are free to contract, even when one side negotiates a harsh bargain"). Accordingly, the Court finds that Defendant breached the Lease in failing to pay the requisite annual increases in Base Rent, and Plaintiff is entitled to summary judgment in its favor.

---

³ It is undisputed that, regardless of the actual change in the CPI index over any particular five-year period, the Lease requires that the minimum rate of increase be 8% and the maximum be 12%.
⁴ It is worth noting that the first draft of the Lease was based on Defendant's template and contained the language at issue here. That language remained in every draft of the Lease. [ECF No. 51 ¶ 6]. As a result, even if the Court were to find the Lease to be ambiguous, "ambiguities in contracts are construed against their drafters." *Key*, 90 F.3d at 1549.

IV.   **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)   Defendant JPMorgan Chase Bank, N.A.'s Renewed Motion for Final Summary Judgment on Plaintiff's Claim and Defendant's Counterclaim, [ECF No. 48], is **DENIED**, and Plaintiff Cypress Property, LLC's Motion for Summary Judgment on Plaintiff's Complaint and Defendant's Counterclaim, [ECF No. 50], is **GRANTED**.

(2)   Plaintiff shall submit a proposed final judgment on or before May 10, 2021.

(3)   This action is **CLOSED** and all pending motions are **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of April, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE